Good afternoon. I'm Justice Aurelia Paczynski, and we are in the First Division of the First District of the Illinois Appellate Court, where you'll see on your screen, I'm joined by my colleagues, Justice Michael Hyman and Justice Mary Ellen Coughlin. We're here today to hear oral argument on case number 1-20-0646, people of the state of Illinois, Plaintiff Appellee v. Eugene Spencer, defendant Appellant. I want to just point out to you that we've read the record, we've read the cases. So it's our advice, normally, to just start with your strongest points and work your way down from there. Each case, each side gets about 15 minutes. We try not to break that up with too many questions, but if we do, we try not to hold it against you. Of course, the appellant will reserve some time for rebuttal. And with that, I'd ask both sides, starting with Mr. Peter Barczyk, to introduce themselves to the court and say which side you're representing. Dan Peter Barczyk, on behalf of the people of the state of Illinois. Mr. Yun? Chan Yun, on behalf of Eugene Spencer. Thank you. Okay, Mr. Peter Barczyk, please. I'm sorry. I'm sorry, Eugene Spencer. The appellant, start, please. Thank you, Your Honor. Good afternoon. I'd like to focus my argument today on the investigative alert issue. But if time allows, I would also like to touch upon the sentencing issues as well. Eugene Spencer was arrested after a year-long investigation. There was no warrant issued for his arrest. Instead, officers from the Chicago Police Department's Fugitive Apprehension Unit arrested Spencer pursuant to what's called a probable cause investigative alert, and that was issued by detectives. We're well aware of the facts. But the question comes, how was he prejudiced here, right? Right. Because even if you throw out his confession... Correct. There's DNA evidence. There is so much evidence here. There's phone calls. There's all sorts of witnesses, including a witness who was right there. I mean, where is the prejudice? Okay, so if we're assuming that the arrest was illegal, then we... For purposes of our discussion right now, let's say that we throw that out, but you still have to show prejudice. Right. And first of all, okay, so we're assuming the arrest is illegal, then we're going to the prejudice prong, saying that Consul was objectively unreasonable for failing to file this motion to suppress. So when we talk about the prejudice prong, again, we don't have to show that Spencer would prevail at trial. We only have to show that whatever evidence was suppressed, if it had not been presented at trial, that there's a chance that the outcome could have been different. And there's case law that says that that chance doesn't even have to be greater than 50%. It could be less than 50%. Okay. Based on everything that Justice Hyman has said, I'll include the video, I'll include the witness statements. What is it that you think was going to let this guy get out of this mess? Right. So what would be suppressed here is the confession itself. And as your honors are aware, the most powerful piece of evidence that the state can present against a defendant at trial is a person's confession. Okay. But even if we took the confession out, even if we said, yep, confession's out, there's still all this other evidence that's not based on the confession, that's not based on the arrest, as Justice Hyman has pointed out, that's stacked against this guy. What have you got? I would respectfully disagree with that, because first of all, okay, so we have the state's theory of the case, okay? And that theory is that Kwame Wilson, Nicole defendant, hired Eugene Spencer to commit this murder in exchange for money, right? And without the confession, the only evidence supporting that theory of the case is the state's witness, Loreana Johnson, who happened to also be a codefendant. Wait, wait, wait, wait, wait, wait, wait, wait. That's not the only evidence. Come on. We're talking about a murder here. And with regard to a murder, the regard to that murder, we have video, we have photos, we have DNA, we have witnesses testifying, Mr. Wyatt. Sure. This is, I mean, to say, how can you say this is even a close case? I mean, you're saying, well, only, no, no. This case has so many witnesses, who testified to evidence with regard to Spencer's culpability, right? For purposes of our argument, we've taken out the confession, right? Right, right. But what we have left, tell us why this isn't an open and shut case. Well, okay, so just getting back to my point, the state's theory of the case, meaning, and so a lot of the evidence that you just pointed out, Justice Hyman, is that a murder occurred. Okay, there's obviously no dispute that a murder occurred. Someone murdered the victim here. And what we're arguing, or my argument is, is that the state's theory that Kwame Wilson specifically hired Spencer to commit this murder, the only evidence of that without the confession, again, assuming the confession is suppressed, is, Lori, again, the co-defendant's testimony about how she saw Spencer and Kwame Wilson communicating, how they were all part of this plan. So what you're doing is centering on the hiring. I'm centering on the murder, whether he was hired or not. He was found guilty of first-degree murder, right, of Wilson's mother. Right, well, yes. But you're talking, you're saying, was there a theory with regard to hiring? I'm not talking about the hiring. I'm talking about the murder. Well, I'm talking about the attempted murder of Wyatt. That's hiring. That's, okay, so obviously a murder occurred, but it's important to establish the motive here, too. I mean, no, the idea here is, did he murder, whether he, whatever the motive might have been, the fact is, did he do the murder? And I'm saying, let's talk about the DNA. Tell us, DNA evidence isn't conclusive? No, I mean, well, so the DNA puts him at the scene. Okay, so there is that DNA from the airbus. There's blood in his blood. There's pictures of him with clothes. Right. I can go on and on, and you're saying what? Well, I'm just trying to say that, Your Honor, that, again, the state's theory of how it happened is still important. And again, the defense is important. But he wasn't, excuse me, he wasn't convicted of conspiracy to murder or any of those sort of get-together crimes, you know, where you have two people working on it. He wasn't convicted of being a murder for hire. He was convicted of first-degree murder. I don't care what the state's theory was, he was still convicted of first-degree murder of Mrs. Holmes, of attempted murder and home invasion. Justice Hyman has correctly pointed out, there is evidence for each of those convictions that is supported with or without the state's theory and with or without the confession. Sure, sure. So we're wrestling with, you keep going back to the state's theory. We're beyond that now. Move past that. Give us your next best argument, because that one's clearly not working. Okay, well, it kind of goes together with my next point, is the defense's theory is that Wyatt and Wilson sort of set up Spencer to commit this crime. That was the if you have a confession from Spencer, that completely undermines that theory, right? So that confession was presented in trial. Now, without that confession, again, now the only evidence that really undermines that in terms of how this occurred or what exactly happened is, again, the Loreanna Johnson's testimony. And Loreanna Johnson's testimony is key here to support the state's case. And as my original point was, is that Loreanna Johnson is a co-defendant who received a 14-year deal served at 50% in exchange for a testimony against Spencer. She was facing a murder charge, possibly a life sentence. And of course, you have to view her testimony with suspicion. Now, if you only have her testimony without the confession, there's not that much evidence that undermines the defense's theory of the case. The defense theory that Spencer was set up to be the fall guy for this scheme that Wilson and Wyatt had planned. And there's also evidence that Wyatt wasn't really getting along with the victim here. There was a domestic dispute that came into evidence. So there's facts here that support that theory. And again, I feel like you're trying to get to the point where I have to prove that Spencer would prevail at trial. That's not the standard here. I only have to show- We're asking you to demonstrate how the existing evidence without the confession should be discounted by this court. Well, the evidence as a whole has to be viewed differently. That's our position. As the evidence as a whole, the state's case as a whole certainly is weaker without the confession. There's no denying that. And specifically for the reason that you don't have that much evidence here now that undermines the defense's theory of the case, that it's possible that Kwame Wilson had a more elaborate plan than this, that Wyatt was more involved in this We only have to show that there was a chance that the outcome could have been different. And without this confession, certainly that could have changed in a juror's mind whether they could have convicted Spencer would be on a reasonable doubt. Yes, there's video of him at the scene, but we don't know exactly what happened in the apartment. There's no video of what happened. That's just from Wyatt's testimony. Under your argument, anytime you throw out a confession, there's no prejudice. You don't have to show prejudice. But what you're saying is, just because we throw out that, the whole thing changes. Am I right? Yes, I mean, it's our position, the whole thing does change. I mean, it's true in every case. And you know, that's not the law. That, I mean, You say, if you throw out a confession, it doesn't matter what else is there, you get a new day. Well, I mean, I would say in every case, I don't know if there would be a reversal in every case, but certainly the state's case That's what we're talking about. In this case, and this evidence, we have to go beyond the evidence of the confession. You know, we said for purposes of this argument, we're putting it aside, but But I'd like you, before you run out of time, to give us your best argument, the best, for why the sentencing should be redone. Right. So sentencing here, you have a judge. And again, I think it's important to note here that you had a joint sentencing period where Spencer and Kwame Wilson were sentenced together. And if you look at the transcript, the judge just goes on and on about how the victim was Kwame Wilson's mother. And that caused, and I don't know if intentionally caused, but it caused the judge to ignore some of the key mitigating factors in Spencer's case here. And namely, that he was fairly young. He was 20 years old at the time of the offense. And it's still open as to whether someone that young can be even sentenced to a de facto life sentence, unless there's a finding that he's permanently corrupt. And then there's also other factors. The fact that he comes from extreme poverty, the fact that he suffered from an intellectual disability. These are factors that explain why he was vulnerable to Kwame Wilson's manipulation. And it's clear that Kwame Wilson here was the mastermind of the offense. And he sort of used Spencer as a puppet to commit this offense and not to excuse his actions. And of course, this is a brutal crime. But to explain why this happened, Spencer was someone who was desperate. There's no other criminal record that we know of associated with Spencer. So these mitigating factors kind of got lost during the sentencing hearing when the judge just went on about how could you kill your own mother? And again, that doesn't, I mean, as brutal as this crime was, that factor doesn't apply to Spencer as well. Spencer, that factor only applies to Wilson. And the fact that they were sentenced together certainly denied Spencer a fair hearing. He wasn't able to- Are you saying that you can't have people being sentenced together? I didn't say that, but I'm saying that in this particular case. Well, why? Why is this case any different? Well, this case, I mean, if you look again, as we look at the transcript, we have the court- I did. I read the transcript and I think the judge made it very clear he was talking about the matricide. He was only talking about Wilson. Right. I mean, I don't think that's always clear. And the fact that he's just focused on that point alone, again, hindered the judge. And I'm just going by what's there on the transcript. I'm going by what the judge said. And he says, page 7, R790, there's a word, I think, that describes this case, at least as far as Wyman Wilson is concerned. And that word is matricide. So he said, as far as Wilson is concerned, he said that right at the beginning of all that discussion. And there's a lot, you know, you talk about in your briefs and you talk about all the other things and you do mention that page, but you go over the fact that he says it applies to Wilson. He's not saying it applies to Spencer. Well, let me go into it. In addition to Justice Hyman's point, doesn't the judge also make it clear that although he's commenting on the facts of the case, which I think he's entitled to do, he also made it clear it wasn't personal. These are the facts of this case. That's what happened. The guy's mother was killed. What's wrong with that? So look, it's, look, so it's the focus. So my point is, is that the judge's focus on the facts, that particular fact, the matricide fact, distracted the judge from considering what was significant mitigation in this case. And is there any evidence of that in the record, other than that's what you're presuming or assuming? Well, the fact that the judge doesn't mention any of the significant mitigation besides a passing remark about how they're young men, yes. Yeah. I mean, if the judge doesn't say that he considered those factors, I mean, you can't say that for sure that, oh yes, he considered the fact that Spencer is someone who came from this extreme poverty, where he was someone who was so poor that he was homeless and wasn't even able to complete school. Someone who has an intellectual disability, someone again, who was manipulated by Paul Maynard Wilson largely to commit this crime. And again, I'm not saying this excuses his actions, but I'm saying that this should have been considered at sentencing. And the fact that the matricide fact dominated the sentencing hearing, that's something that denied Spencer a fair sentencing hearing in this case, where he, where the judge actually considered the mitigation and how it applies to him. And that, and that's our position. If your honors were inclined to deny Spencer a fair trial, then certainly he deserves a fair sentencing hearing where these mitigating factors could actually be considered. And what about, recently there's a case people versus Elliot, 2022 ILAP verse 192294, where an appellate panel said when section 54.5-115B applied, the defendant's sentence is not a de facto life sentence since the defendant is eligible for what's your position on that? Well, Spencer, I mean, it's still a hundred year sentence that he has to serve a hundred percent of. I think under anyone's deficient definition of what a de facto life sentence is, that is a life sentence. And Spencer, not a juvenile, but case law is still open as to whether emerging young adults up to the age of 21 appears at this point, but emerging adults are entitled to those same protections. And if you look at the sentencing hearing here, those factors weren't considered the factors that you would have to consider in terms of a juvenile. Okay. There's, there's no discussion that the legislation that was passed by the legislature that became effective in 2019 affects this young man who was under the age of 21 and committed a homicide, convicted of a homicide, after the law was passed in 2019. He was sentenced after the law was passed. So he does qualify for that parole eligibility. It doesn't mean he's going to get a parole, it just means he's eligible to apply for parole after serving 20 years. And Supreme Court also said we have to take all of that into account. So why are you saying that it's not, that there's no case law that says that he can apply for parole when it's clear that he can? I didn't say that there was no case law. I'm just saying that whether his sentence is a de facto life sentence. I mean, I'm saying it is. I mean, he's serving a hundred year sentence at this point. Again. How does he qualify for the whole de facto argument, since he was not a juvenile at the time? Well, he's an emerging adult. And I mean, as far as I know, the case law hasn't ruled that out, whether someone above the age of 18, and early 20s in that range, is entitled to that sort of relief. So I'm just leaving that potential open. Again, this is just, and Spencer's age is just one consideration here. Again, we have to look at his background as a whole, and someone who, someone who is not just a young man, but someone who came from horrendous circumstances. And as horrible as this crime was, those circumstances have to be considered for him to receive a fair sentencing period. And just for the sake of argument, do you agree that there are thousands of young men and women in the Chicago metropolitan area who have, who grew up in horrible circumstances that aren't out killing other people, that don't make that choice? Yes, I agree. But I agree with that point. But that you came from horrendous circumstances can't, shouldn't be ignored, just because others were able to lift themselves out of, out of that. Ignored, I, I follow all of this, all of the cases about emerging adults very carefully. And I've written on, but I'm not sure that we have any case that says, because someone qualifies as an emerging adult, which there's still a difference of opinion about what age bracket that is. I mean, some scholars would take it up to the age of 30. Some would take it up to the age of 26. Some would take it up to the age of 21. So there's no definite end of the emerging adult cycle. Everybody agrees that it's more than 18, but nobody agrees on what it's less than. So let's just say for the sake of argument, it's between 18 and 25, which is a little bit more common than the other age factors that I've seen. So he fits within that, but I'm not aware of any case that says definitely an emerging adult is somebody who's between the age of 18 and 25. And if you're an emerging adult, you get to have the benefits of the de facto life sentence analysis that was created by Buffer. What we've seen is the Supreme Court has said, well, if you're an emerging adult, if you're not going to use the term emerging adult, they said, if you're someone who's over the age of 18, you can file a post-conviction petition. And that's the right way to go about the sentencing question, but I've not seen any case. Maybe I'm wrong. Did I miss it? No, look, I'm saying that here, those factors, in terms of whether Spencer received a fair sentencing hearing, whether he's entitled to the same rights as a juvenile, as your honor mentioned, that's a different question, but whether this was a fair sentencing hearing. And that's what I'm focused on right now. I don't believe so. I didn't bring that up. You brought that up. So if we're going to separate emerging adult analysis from a fair sentencing hearing analysis, then go for the fair sentencing hearing analysis, because I want to hear you summarize that. Well, I mean, that's what I raised both in my briefs, right? And I did discuss the fair set, his focus, again, on the matricide, and then- For Wilson. For Wilson? I mean, specific. He said he was talking about Wilson when he talked about matricide. He wasn't talking about Spencer. I mean, he said that at one point at the sentencing hearing, but the fact that he goes on and on about it makes it seem as if he's not really limiting that to Spencer, or eliminating that to Wilson, excuse me. Look, that fact, the matricide fact, dominated the sentencing hearing. And again, it's our position that because it dominated the sentencing hearing, it distracted the judge from discussing and considering the other important mitigation in respect to Spencer. And that aggravating factor that only applies to Wilson, it doesn't apply to Spencer, but yet it dominated his sentencing hearing. And if you look, if you consider facts like that, that to me shows that Spencer was denied a fair sentencing hearing, all things considered, given his circumstances. So again, that's our position, that he is entitled to a new sentencing hearing on that basis, and if not, a new trial based on the investigative alert issue. So, if your honor still have any other questions, I'd like to reserve two minutes for rebuttal. Okay, any other questions? No? Mr. Kiefer-Bartrick. Please, the court. Cases should be decided whenever possible on non-constitutional grounds. This court can, and therefore should, reject defendant's ineffective assistance claim, without reaching the constitutional question of the investigative alert. I have four good reasons for this. First, trial counsel was not deficient just because he failed to predict the best decision. Performance can only be measured by the legal authority available at the time. Why don't you address the arguments that were just made with regard to, he's saying that, as I understand it, the state's theory of the case was such that if you take out the confession, they can't prove, you know, there's enough possibility there that he was used as a sort of a weapon against the mother, that Wyatt and Wilson put him up to this. Um, yeah, that argument simply doesn't make sense. Wyatt was not working with co-defendant Wilson to set the defendant up here. The phone records show that co-defendant Wilson was making constant phone calls with defendant, not Curtis Wyatt. Curtis Wyatt was severely beaten in this case. And the forensic evidence shows that he was in bed and shot at five or six times. But as he's, after his girlfriend, the victim in this case is shot in the head in bed. And then he's pistol whipped, he estimates about eight to 10 times. And there's a photograph in record of him immediately after this and it's in a hospital bed. And it's clear that he took a tremendous beating from the defendant in that encounter. He was taken by surprise in his underwear while he was sleeping in bed next to his girlfriend. He was not in cahoots with his girlfriend's son to murder her. And I think it also, also speaking to that is the fact that the testimony is pretty clear that from the very moment that this murder happens, he is squarely cooperating with the police. He calls 9-1-1 twice. He meets the paramedics at the door and he goes to the police station every single time the police ask him to. This is not somebody who had some kind of like argument and was trying to do away with his girlfriend. This was somebody who lost a loved one in a surprise attack when the defendant home invaded him and brutally murdered his girlfriend right next to him and nearly killed him. I just like to say I misspoke when I think I said Wilson when I meant Wyatt. I just want to make sure I knew who I was talking about and so I appreciate it, but I misspoke. Okay. You had begun to tell us the four reasons why we should not decide the constitution. One is Bass wasn't even decided at the time of trial. What are the other three? So the second one is that even if the trial counsel had predicted Bass, you still would have had the fact that the case, the confession wouldn't have been suppressed because the police acted in good faith based on the existing law at the time. Once again, Bass was a case of first impression with regard to investigative alerts. So the police were acting based on what they understood to be the law. They believed that there was probable cause here. There's no dispute that there's probable cause here and Irwin... The police could have gone to, could have gotten a for his arrest. This is a police officer saying, without seeing the crime, just go out there and arrest this guy. Months later. Okay. Can I hear what the other two reasons are before we... So the second point is there was a probable cause. What are the other two? Well, I'm asking about the probable cause. I mean, that's the basis for going before a judge and that's why this constitution has that provision. I'm finding... I wanted to him to answer why that doesn't apply here. So I would definitely point out that page 41 in the common law record shows that the day after the defendant was arrested, he was in front of a judge, a neutral magistrate who found that there was probable cause to detain the defendant. So the day after... It happened before. You know... He got a Gerstein hearing one day later. So this wasn't some long-term detention based solely on the word of a police officer. There was a very prompt bringing of him in front of a neutral magistrate in a short period of time, one day after he was arrested. Well, maybe that shows that the police knew they had done wrong and they did it so quickly because they should have gone before a magistrate before going to arrest him rather than afterward. Well, we don't have a full record here because this wasn't raised because it was pre-passed, but I would say that what the record does show is that the police were in the middle of a large and very active investigation at the point when the detective called the officer from the fugitive apprehension unit and asked him to find and arrest the defendant. There were a total of three defendants in this case. There were a lot of pieces of evidence involved and what happened was the detective delegated something that was part of the investigation to the fugitive apprehension unit and asked a specific officer, Officer Johnson, to find and locate and arrest him. That happened 28 hours later by that same officer. He was arrested and then one day later, he was brought in front of a neutral magistrate. Can I have arguments three and four now? Yes, your honor. The third reason that this doesn't require reaching the constitutional issue is because even if the trial court had suppressed the defendant's confession, he still would have been convicted based on the overwhelming evidence. I'd like to focus on the DNA evidence to start out with. The defendant left his DNA evidence at the crime scene and specifically, this was an earbud that was left on the ground on the floor in the bedroom where the victim was shot in the head and where the surviving victim was shot at and struck repeatedly. This earbud had the defendant's DNA on the inside of it where the wearer would put it and the outside of the earbud also had the surviving victim's blood on it. This was a single wired earbud with a broken piece of wire sticking out of it and the security video from the building shows that the shooter was wearing wired earbuds when he came into the building and went into the victim's apartment and then nine minutes later when he leaves, he's not wearing any earbuds. So this is very strong evidence connecting defendant directly to the specific place where the murder happened and that DNA is corroborated by two identifications by key and in the hallway and the second is Johnson who drove the defendant to the victim's apartment and drove him away from the apartment and testified that he came back from the apartment after approximately 10 minutes in it and smelled like blood and described having his gun jamming and having to resort to a knife which fits exactly with the medical testimony which shows that the and apparently was still moving around enough that the defendant felt the need to stab her twice in the stomach in order to make sure that she was dead. So for the reasons both that there's overwhelming evidence and the good faith, those both go to the second prong of Strickland which show which prevent the defendant from showing prejudice without reaching the constitutional issue of whether or not this the fourth reason your honor is because that this court doesn't need to reach the constitutionality of the investigative alert is because it was absolutely irrelevant to how the defendant got arrested and I realized I kind of touched on this already but the sequence of events here is completely uncontradicted. Detective Wood developed probable cause at area north when the co-defendant Wilson pointed the finger at defendant. He identified defendant in a still photograph from the security video from the victim's apartment. He identified the defendant's phone number. This was very very solid probable cause and Detective Wood called Officer Johnson in the Fugitive Apprehension Unit and told him to find and arrest the defendant and the defendant in his reply brief concedes that if Detective Wood had gone out on her own and had arrested the defendant there would be no issue here. He concedes that so all he's saying is that because Detective Wood asked Officer Johnson to go out and arrest him for her instead of doing it herself that that somehow made an otherwise legal arrest illegal which doesn't any sense because this is a classic example of imputed knowledge. This is within the same department. This is how police work actually works. This is the detective leading a complicated homicide. You don't want that detective suddenly dropping all the other leads to spend the next 28 hours staking out one defendant's house waiting for him to come out so that way she can arrest him. That's why there's a Fugitive Apprehension Unit. So what it really comes down to is it was that phone call that got the defendant arrested. Yes there was an investigative alert put in by Detective Wood that was used by Officer Johnson. That was the procedure that the Chicago Police Department used but that was completely beside the point. It all would have happened the exact same way without an investigative alert here. It all happened very quickly. It all happened appropriately and this simply isn't an investigative alert case. It frankly would be paradoxical if the totally irrelevant investigative alert in this case made the arrest illegal. Those are my four reasons for why this court does not need to find that the defendant has not established ineffective assistance of counsel on issue number one. If there are no other questions on that I'd like to take the opportunity to address the sentencing issues that the defendant talked about. With regard to matricide, it's absolutely clear if you kill your own mother it's called matricide. The court was absolutely clear about that. Obviously this defendant did not kill his own mother. He killed co-defendant Wilson's mother so he did not commit matricide and the court never said he did. When the court was talking about matricide it was clearly talking about the co-defendant's crime. What the defendant did was brutally murder a woman and try to murder her boyfriend and the hundred-year sentence absolutely reflected the fact that he used a gun to shoot her in the head and a gun to shoot at the surviving victim. That hundred-year sentence doesn't have to be at all attributed to matricide. That can be absolutely attributed to the nature of this murder regardless of any relationship between the defendant and the victims. The other complaint of comment defendant hasn't made any argument about here so I'm not going to address that and turn to the proportionate penalties issue. With regard to that defendant was three weeks from his 21st birthday when he committed this murder. The question here is at the time of his crime did the defendant think and act like a juvenile such that a life sentence is brought up? Elliot and I agree that Elliot absolutely applies in this case. It fits the defendant will be eligible for parole in 20 years based off that statute and I would ask that the court consider and apply the reasoning of Elliot to this case. I would also say that the trial court why do you think Elliot's correctly decided wouldn't that vitiate what the court has said if buffer applies to those between 18 and 21 say then those that are over 18 could get de facto life sentences and there's nothing that can be done about it because they have the 20 years they can wait and try their luck at probation. Is that your position? Having the opportunity after 20 years to be able to get parole definitely addresses the question of a 40-year de facto life sentence. It's the opportunity. This is a 100-year life sentence. That's a 100-year life sentence. Right but it's the it he has he has a 100-year sentence absolutely but if he's eligible for parole if he has the opportunity for parole after only 20 years then he hasn't reached the the buffer threshold for a de facto life sentence. What case is that in Elliot? It's just Elliot and that was so that was a first impression and so by a different panel. I'm not an expert on Elliot. I've read it in preparation for this argument and I think I'm a good attorney. You'll be aware of it. I understand you would like to see us follow Elliot but it's the position of the state that the fact that you have probation which is different than good behavior which is the Dorsey case. What Elliot did is adopted Dorsey and expanded it to include probation as I understand what they did. Why would that be a logical extension of Dorsey what they did in Elliot? Well I think I think it's a logical extension because at a policy level it's it it makes a tremendous amount of sense because what you're doing is you're creating an incentive for the person who has the sentence to conduct themselves in a way that is conducive to rehabilitation. That the opportunity to be before a parole board just like the opportunity to earn good conduct credit. Both of those involve not just saying sir you're going to get out in 39 years regardless of what you do but instead saying if you do things to make yourself better to rehabilitate then that is going to give you a better chance of getting out sooner and I think that that that makes a tremendous amount of sense in both of those cases. So you think the legislature intended that those between 18 and 21 who get de facto life sentences should keep their life sentences because they have a chance after 20 years of parole? It once again with the caveat that I'm not an expert on Elliot but I think that the legislature was addressing that concern and I think that when courts review it that's the application of that statute is something that needs to be considered. Thank you. I think that that's not I think I have a lot of really good arguments on that issue that have nothing to do with Elliot that I have in my brief. I think the trial court fairly considered this question and answered no and I think it's important to keep in mind that this is an issue where this isn't like a first stage PC where it's being sent back to further investigate. This is a case where the trial court had the benefit of Miller and House and Buffer and heard everything that the defense could present in mitigation and seriously considered it. The trial court specifically said that it follows the case law on this issue and believes that there are cases where 19-year-olds should be sentenced below the mandatory minimum where 20-year-olds should be sentenced below the mandatory minimum. The court acknowledged that but said that this wasn't one of those cases and the defendant complains that in deciding that there was too much focus in that decision on the crime that was committed. But when you look at the defendant's own cases the key question is at the time of his crime did he think and act like a juvenile such that he it would make the life sentence unconstitutional as applied to him. So at the time of the crime requires you to look at the crime and in this case it wasn't youthful impetuosity that led to this crime. The defendant got into the back of Johnson's car and was driven by himself across the city to the victim's apartment building, went in by himself, snuck in with like with clothing and detergent bottles so that way people would think he looked like he was going into the building as a resident and brutally this woman shot her in the head and then stabbed her twice in the abdomen to make sure she was dead and then like tried very hard to kill Wyatt as well before escaping and this doesn't this is this is a murder for hire situation. Somebody told him they would give him money to kill this person and he didn't and the trial court determined that he was not it did not reflect that he was like a juvenile and as a result of that the 100 year sentence was appropriate. If there are no further questions on well actually I would just like to briefly state one final point which is just that the defendant asks about on the sentencing issues about sending the issue back to a different judge and I would just like to point out that on the sentencing issues we're talking about forfeited errors here. This isn't a case where the there's any basis for reassignment. At most any error in sentencing is ambiguous and isolated and there wasn't even a motion to reconsider sentence here to give the trial court an opportunity to clarify whatever comments the defense has decided to focus on. So it just seems incredibly unfair and almost like a gotcha type thing to then pair forfeited error with it with reassignment. So if there are no further questions for the reasons stated in my brief and for the reasons stated here the people of the state of Illinois ask that you affirm the defendant's convictions and sentence. Any other questions? So just real briefly so the state argues that this good faith exception should apply to counsel's inability to raise this issue earlier and to the police's conduct in regarding the investigative alert. I just want to say that the Chicago Police Department seems to be the only police department in the whole state that uses these investigative alerts to make arrests. Every other police department in the state seems to following an investigation they go and get an arrest warrant and then they go arrest the person. So to say that this good faith exception applies would be akin to giving the Chicago Police Department special treatment and to giving counsel here who should be aware that police departments in other parts of the state do get arrest warrants and that there's something fishy about these investigative alerts. That was not decided at that time but Highland had been cited you have the concurrence there and it's our position that the law has remained the same on investigative alerts since that language in the constitution was was first added. Second of all just in regards to the imputed knowledge or the collective knowledge principle in regards to investigative alerts it's not that doesn't mean that when one police officer gets probable cause that it transfers to all the officers in the department it doesn't that doesn't work literally or legally. As far as I know the case law says that the collective knowledge principle states that when police officers are working together as a unit then they can communicate and share probable cause but probably when one officer in the department has probable cause it doesn't magically go to all the other officers that's why you have to get an arrest warrant in the first place. So to say the collective knowledge principle applies here is it would excuse the illegality of the arrest. And then just the third point about whether this court has to address the whether there's prejudice. I've never seen a case where the court considers prejudice first and then considers the error. It's always error then prejudice. So whether this court agrees that there was prejudice it should address the constitutional question here. And then finally as to sensing just one last point I know you your honors have gone through this a lot just with regard to the crime itself. Yes there wasn't the impetuosity this is what the state mentioned that there was no impetuosity here but again I just want to say that this Spencer is someone who came from a desperate situation and someone who's just trying to survive essentially given his background and for him and again not to excuse his actions but to explain why it happened and that is mitigation that I think should be considered that would be considered for a young adult or a juvenile. So if your honors don't have any other questions we would ask for the request or relief requested in our briefs. Thank you. Any questions? No? Well in that case thank you both gentlemen for your excellent briefs and wonderful oral argument. We've discussed a lot of things today and really have appreciated the input that you've given us but we'll take this matter under consideration and enter an order or an opinion forthwith and with that this case is adjourned and the court is adjourned. Thank you. Thank you your honors. Thank you your honors.